**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL WHITTED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  12 C 2461 |
| | ) | |
| COOK COUNTY SHERIFF THOMAS | ) | |
| DART, and the COUNTY OF COOK, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

On September 16, 2013, Plaintiff Michael Whitted filed a three-count Fourth Amended

Complaint alleging a Fourteenth Amendment substantive due process claim (Count II) and a

claim pursuant to *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56

L.Ed.2d 611 (1978) (Count III), against Defendants Cook County Sheriff Thomas Dart and the

County of Cook.[1]  Before the Court is Defendants' motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56(a).  For the following reasons, the Court denies Defendants'

summary judgment motion.

## BACKGROUND

### I.     Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the

advantage of the parties' familiarity with the record and often cannot afford to spend the time

combing the record to locate the relevant information,' in determining whether a trial is

---

[1]  In his response brief, Plaintiff voluntarily dismisses his Fourth Amendment claim as
alleged in Count I of the Fourth Amended Complaint.

necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632; *see also Frey Corp. v. City of Peoria, Ill.,* 735 F.3d 505, 513 (7th Cir. 2013).

In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.,* 686 F.3d 394, 398 (7th Cir.

2012). With these standards in mind, the Court turns to the relevant facts of this case.

## II.     Relevant Facts

On May 20, 2008, a Circuit Court of Cook County judge arraigned Plaintiff as an adult with armed robbery in the Circuit Court of Cook County Sixth Municipal District Courthouse located in Markham, Illinois. (R. 95, Defs.' Rule 56.1 Stmt. Facts ¶ 4.) During the May 20, 2008 court appearance, a record was made in open court that Plaintiff was 16-years-old. (*Id.* ¶ 6.) Also during the May 20, 2008 court appearance, the Circuit Court judge held a bond hearing and set bond in Plaintiff's case. (*Id.* ¶ 7.) The Clerk of the Court then filled out a mittimus that did not indicate which detention facility (adult or juvenile) the Sheriff's officers were to transport Plaintiff.[2] (R. 102, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶ 5, Ex. D.)

After his court appearance, a Sheriff's deputy took Plaintiff into a holding area with his co-defendant, who was an adult, where they remained for approximately 30 minutes. (Defs.' Stmt. Facts ¶ 9; Pl.'s Stmt. Facts ¶ 4.) Thereafter, the Sheriff's deputy took Plaintiff to another holding cell with approximately seven to eight adult arrestees. (Defs.' Stmt. Facts ¶ 10; Pl.'s Stmt. Facts ¶¶ 7, 9.) After four hours in the second holding cell, two Sheriff's officers transported Plaintiff and the other arrestees to the Cook County Department of Corrections ("CCDOC"). (Defs.' Stmt. Facts ¶ 11; Pl.'s Stmt. Facts ¶ 10.) Plaintiff asked both transport officers when they were going to take him to the Juvenile Temporary Detention Center ("JTDC"). (Defs.' Stmt. Facts ¶ 12.) The officers told him that they would first transport him to the CCDOC with the adult arrestees and then transport him to the JTDC. (*Id.*; Pl.'s Stmt. Facts ¶

---

[2] Defendants' arguments based on the boilerplate language found on the Clerk of the Circuit Court of Cook County's form number CCCR N707-75M-10/8/04 (43350124) are unavailing. (R. 95-4, Ex. D, R. 95-5, Ex. E.)

11.)

Upon arriving at the CCDOC, the arrestees — including Plaintiff — exited the bus, after which Sheriff's officers strip-searched them. (Defs.' Stmt. Facts ¶ 14; Pl.'s Stmt. Facts ¶ 12; R. 95-2, Ex. B, Pl.'s Dep., at 26-28.) The officers then placed Plaintiff in a holding cell with adult arrestees. (*Id.*) During his initial intake, Plaintiff spoke to an unnamed Sheriff's officer and told the officer that he was 16-years-old and that he was not supposed to be at the CCDOC. (Defs.' Stmt. Facts ¶¶ 15, 16; Pl.'s Stmt. Facts ¶¶ 1, 13; Pl.'s Dep., at 31-32.) The officer then accused Plaintiff of lying about his age. (Pl.'s Stmt. Facts ¶ 14.) After completing the initial intake, Plaintiff talked to a mental health professional as part of the overall intake process. (*Id.* ¶ 17.) At that time, Plaintiff told the mental health care provider the date of his birth. (*Id.*)

After completing the intake procedure, a Sheriff's deputy transferred Plaintiff to Division 11 of the CCDOC. (Defs.' Stmt. Facts ¶ 18.) Plaintiff was housed in cell 23 with an adult detainee. (Pl.'s Stmt. Facts ¶ 19.) Once in Division 11, Plaintiff told a Sheriff's deputy that he was in the wrong place because of his age. (*Id.* ¶ 20; Pl.'s Dep., at 57-58.) During his transport, intake, and detention at the CCDOC, Plaintiff told at least five Sheriff's office employees that he was a minor. (Defs.' Stmt. Fact ¶ 38.)

At some point on the evening of May 21, 2008, Plaintiff called a friend and asked him to notify his mother that he was in adult detention and that his mother needed to bring proof of his age so he could be transferred to the JTDC. (*Id.* ¶¶ 23, 24; Pl.'s Stmt. Facts ¶ 21.) Plaintiff then went to the shower area at which time two adult detainees hit him on the back of the head, threw a blanket over his head, and pushed him to the ground. (Pl.'s Stmt. Facts ¶ 23.) While naked and lying face down on the shower floor, the adult detainees held Plaintiff with a choke-hold and

4

anally raped him.  (*Id.* ¶ 25; Defs.' Stmt. Facts ¶ 26.)  Immediately after the rape, the adult

detainees told Plaintiff that they would kill him if he told anyone.  (Pl.'s Stmt. Facts ¶ 26.)

The next morning on May 22, 2008, a correctional officer told Plaintiff to pack up

because he was leaving Division 11.  (Defs.' Stmt. Facts ¶ 29.)  Sheriff's officers then

transported Plaintiff to Division 9 and placed him in protective custody.  (*Id.* ¶ 31; Pl.'s Stmt.

Facts ¶ 27.)  Plaintiff remained in Division 9 until the afternoon of May 23, 2008, when Sheriff's

officers transported him to the JTDC.  (Defs.' Stmt. Facts ¶ 33.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P.

56(a).  A genuine dispute as to any material fact exists if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  In determining summary judgment

motions, "facts must be viewed in the light most favorable to the nonmoving party only if there

is a 'genuine' dispute as to those facts."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167

L.Ed.2d 686 (2007).  The party seeking summary judgment has the burden of establishing that

there is no genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317,

323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  After "a properly supported motion for summary

judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine

issue for trial.'"  *Anderson*, 477 U.S. at 255 (quotation omitted).

# ANALYSIS

Plaintiff brings his Fourteenth Amendment substantive due process claim based on the state-created danger/special relationship exceptions to *DeShaney v. Winnebago County Dep't of Social Serv.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). *See Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Because Plaintiff brought this action against Sheriff Dart in his official capacity and did not identify the John Doe Defendants within the statute of limitations, the Court must examine Plaintiff's substantive due process claim within the framework provided by *Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See Snyder v. King,* 745 F.3d 242, 246 (7th Cir. 2014); *Belbachir v. County of McHenry,* 726 F.3d 975, 982 (7th Cir. 2013). To clarify, "[a] government entity violates the Due Process Clause only if it maintains a policy or custom that infringes upon the rights protected by that clause." *Hamilton v. County of Madison, Ill.,* 746 F.3d 766, 780 (7th Cir. 2014). To establish liability against Sheriff Dart, Plaintiff "must show the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago,* 690 F.3d 829, 833 (7th Cir. 2012).

Here, Plaintiff asserts that Sheriff Dart's failure to train Sheriff's deputies and officers on the basic means by which to ensure that juvenile detainees are not housed with adult detainees was the moving force behind the deprivation of his substantive due process rights. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson,* ___ U.S. ___, 131 S.Ct. 1350, 1359, 179 L.Ed.2d

417 (2011). Under this standard, a local government's failure to train must amount to the deliberate indifference of the rights of the citizens whom the officers encounter. *See id*. (citing *Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). "Deliberate indifference" is a term used in both Eighth Amendment claims and constitutional actions against municipalities. *See Farmer v. Brennan,* 511 U.S. 825, 841, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Specifically, "deliberate indifference serves under the Eighth Amendment to ensure that only inflictions of punishment carry liability." *Id.* On the other hand, the "term was used in the *Canton* case for the quite different purpose of identifying the threshold for holding a city responsible for the constitutional torts committed by its inadequately trained agents." *Id.* (citation omitted). Proof of deliberate indifference in the context of a failure to train case "can take the form of either (1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations by its officers." *Sornberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1029-30 (7th Cir. 2006).

In his brief, Plaintiff focuses on the first method of proof explaining that "[a]lthough often the best way to prove that the municipality was deliberately indifferent is to show many instances of constitutional violations that show a pattern that was ignored by the municipality, [] that is not the only means." (R. 107, Resp. Brief, at 18.) Indeed, usually "[a] pattern of similar constitutional violations by untrained employees" is necessary "to demonstrate deliberate indifference for purposes of failure to train." *Connick,* 131 S.Ct. at 1360. Nonetheless, the first method of proof as discussed in *Sornberger,* also known as the "single-incident" method as hypothesized by *Canton*, is an alternative to establishing deliberate indifference in a failure to train case. *See Connick,* 131 S.Ct. at 1360-61. As the *Connick* Court explained:

7

In *Canton*, the Court left open the possibility that, "in a narrow range of circumstances," a pattern of similar violations might not be necessary to show deliberate indifference. The Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force. Given the known frequency with which police attempt to arrest fleeing felons and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of constitutional rights. The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations.

*Id.* (internal citations omitted). Thus, under *Canton* and *Connick*, single-incident liability is available in rare circumstances where the need for more or different training is so obvious that a plaintiff's injury is a "highly predictable consequence" of any such deficient training. *See Connick,* 131 S.Ct. at 1361; *Canton,* 489 U.S. at 390. Liability under this theory depends on the "likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 409-10, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Viewing the facts and all reasonable inferences in Plaintiff's favor, he presents the following evidence to support his failure to train claim. First, it is undisputed that the entire Cook County Department of Corrections falls under the purview of Cook County Sheriff Thomas Dart, including the 11 divisions at the Cook County Jail, the transportation of detainees to the CCDOC and JTDC, and the various lockups and holding cells at all of the Cook County Courthouses. (Pl.'s Stmt. Facts ¶ 28.) It is further undisputed that the CCDOC is required to follow Illinois law and keep juvenile detainees separate from adult detainees as a matter of

policy.  (*Id*. ¶ 29.)

At his deposition, CCDOC Assistant Executive Director Michael Charles Holmes testified that there was a policy in May 2008 that people under the age of 17 could not be housed in the adult Cook County Correctional System, but he was unsure how that policy was enforced or how Sheriff's deputies were made aware of this policy.  (*Id*. ¶ 30, R. 95-6, Ex. F, Holmes Dep., at 90-91.)  Holmes further testified that in May 2008 there was a policy in place that Sheriff's officers would transport juvenile detainees on a separate bus than adult detainees, although, again, he was unsure how Sheriff's officers were trained on this policy.  (*Id*. ¶ 36, Holmes Dep., at 24-27, 31-33.)  In addition, Holmes stated that if a detainee claimed to be under the age of 17 during the intake process, the Sheriff's officer would immediately notify a supervisor and the supervisor would then generate the necessary paperwork to determine the detainee's classification.  (*Id*. ¶ 37, Holmes Dep., at 44-45.)  Holmes stated that he believed this policy was in the CCDOC's rules and regulations.  (*Id*., Holmes Dep., at 49.)

The Chief of the Civil Division, Kelly Jackson, who was in charge of all the courtroom Sheriff's deputies in May 2008, testified at her deposition that a state statute dictates the policy that children under the age of 17 cannot be housed in the adult Cook County Correctional System and that Sheriff's officers are trained in juvenile law when they are at the academy.  (*Id*. ¶¶ 30, 33, R. 95-7, Ex. G, Jackson Dep., at 43-45.)  Jackson further testified that although the policy for juvenile arrestees is to separate them from the adult arrestees while in court, as a matter of practice, keeping juveniles separate from the adult arrestees is not always possible. (*Id*., Ex. G, Jackson Dep., at 13-14.)  Also, Jackson stated that there was a policy that juvenile detainees cannot be held in the same holding cells as adult detainees.  (*Id*. at 20.)  Nevertheless,

the sergeant in charge of the Markham Courthouse lockup, Eugene Matthews, testified at his deposition that the training for courtroom deputies did not include training on how to deal with juvenile arrestees. (*Id.* ¶ 32, R. 102-25, Mathews Dep., at 20-21.)

Moreover, at her deposition, Jackson admitted that the screening sheet and information reports generated by the Sheriff's deputies indicate a detainee's date of birth. (Pl.'s Stmt. Facts ¶ 34; *see also* Pl.'s Exs. 19, 20.) Other evidence in the record, however, suggests that there is no policy or procedure requiring a Sheriff's officer to calculate the age of a detainee based on his birth date. (*Id.* ¶ 35, Ex. F, Holmes Dep., at 94.)

Based on these facts, Plaintiff has proffered sufficient evidence creating a triable issue of fact that the Cook County Sheriff's employees responsible for separating, transporting, and guarding juvenile and adult detainees do not receive adequate training and that it was highly predictable that placing a juvenile detainee in the general adult population at the Cook County Jail would result in a constitutional violation, in this case, the rape of the juvenile detainee by adult detainees, as discussed in detail below. In other words, based on this evidence, a reasonable jury could conclude that due to the violent and volatile nature of the Cook County Jail, it is highly predictable that the lack of adequate training in separating juvenile and adult detainees — as dictated by state law — would result in the violation of juvenile detainees' constitutional rights. *See Taylor v. O'Grady*, 888 F.2d 1189, 1196 (7th Cir. 1989) ("As one of the largest and most populous county jail facilities in the country," the "Cook County Jail houses criminals charged with a variety of crimes, from misdemeanors to murder and many of the prisoners may be violent.").

In particular, construing the evidence and all reasonable inferences in Plaintiff's favor, evidence in the record reveals that although there was a policy in place in May 2008 that children under the age of 17 could not be housed in the adult Cook County Correctional System, how and if the Sheriff's office actually trained officers and deputies as to this policy is unclear. Further, although there was a policy in place, there is evidence that it was not always possible to keep juvenile and adult detainees separated.  It also appears that there is a protocol for when a detainee claims to be under the age of 17 during the intake process, yet in this matter, the Sheriff's officer did not notify a supervisor or double-check the necessary paperwork, but instead accused Plaintiff of lying.  In addition, although the screening sheet and information reports generated by the Sheriff's deputies and officers indicate a detainee's date of birth, either there is no system in place for Sheriff's officers to calculate a detainee's age or the officers are not trained to look at the date of birth information when transporting, processing, and incarcerating pre-trial detainees.

Under the circumstances, the Sheriff's officers' deliberate indifference led directly to the predictable consequence that the adult detainees physically harmed and raped Plaintiff.  *See Bryan County,* 520 U.S. at 409-10.  As the *Canton* Court posits — "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?"  *Canton,* 489 U.S. at 391.  Here, the answer is yes, especially because Plaintiff informed Sheriff's personnel at least five times that he was under the age of 17.  Therefore, the Court denies Defendants' summary judgment motion regarding Plaintiff's *Monell* claim.

11

The Court now turns to Plaintiff's argument that Defendants violated his substantive due process rights under state-created danger/special relationship exceptions to *DeShaney*.[3]  As the *DeShaney* Court explained, the purpose of the Due Process Clause of the Fourteenth Amendment is "to protect the people from the State, not to ensure that the State protect[s] them from each other." *Id.* at 195.  Accordingly, "[t]here is no federal constitutional right to be protected by the government against private violence in which the government is not complicit." *Sandage v. Board of Comm'rs of Vanderburgh County,* 548 F.3d 595, 596 (7th Cir. 2008).  Nevertheless, "while there's no federal constitutional duty to protect or to rescue from a peril that the government did not create, there is a duty not to harm." *Id.* at 597 (internal parenthesis omitted).  Also, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney,* 489 U.S. at 199-200; *T.E. v. Grindle,* 599 F.3d 583, 589-90 (7th Cir. 2010) ("An exception to [*DeShaney's*] general rule exists when the state has a 'special relationship' with the citizen, such as when it takes the person into custody or otherwise imposes

---

[3]  Plaintiff also argues that the officers' conduct violated his due process right to his liberty interest in "unjustified intrusions on personal security." *See Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *White v. Rochford,* 592 F.2d 381, 383 (7th Cir. 1979).  This argument is based on cases decided before the Supreme Court's 1989 *DeShaney* decision and dovetails with Plaintiff's state-created danger/special relationship argument. *See DeShaney,* 489 U.S. at 199-200 ("when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being").  In fact, the Seventh Circuit has repeatedly cited *White* in reference to the state-created danger/special relationship theories. *See, e.g., Paine v. Cason,* 678 F.3d 500, 510 (7th Cir. 2012); *Jackson v. Indian Prairie Sch. Dist. 204,* 653 F.3d 647, 655 (7th Cir. 2011).

limitations on the person's 'freedom to act on his own behalf.'").[4]

To establish his substantive due process claim, Plaintiff must present evidence showing that: (1) Defendants created or increased a danger that he faced while he was in custody; (2) Defendants' failure to protect him from the danger was the proximate cause of his injuries; and (3) Defendants' failure to protect Plaintiff "shocks the conscience." *Jackson v. Indian Prairie Sch. Dist. 204,* 653 F.3d 647, 654 (7th Cir. 2011). "The Supreme Court has held that state action that shocks the conscience is conduct which may be deemed 'arbitrary in the constitutional sense.'" *Id.* (citation omitted); *see also Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007) (substantive due process "affords protection of the individual against arbitrary action of government"). "Only 'the most egregious official conduct' will satisfy this stringent inquiry," such that "[m]aking a bad decision, or even acting negligently, does not suffice to establish the type of conscience-shocking behavior that results in a constitutional violation." *Jackson,* 653 F.3d at 654-55 (citation omitted).

Viewing the facts and all reasonable inferences in Plaintiff's favor, he has clearly fulfilled the first two elements of his substantive due process claim, namely, Defendants created and increased the danger that he faced while he was in custody at the Cook County Jail by placing him with adult detainees and it was foreseeable that Defendants' failure to protect him from this danger while he was a juvenile pre-trial detainee caused his injuries. *See Paine v.*

---

[4] Instead of categorizing the *DeShaney* exceptions as the "special relationship exception" and "state-created danger exception," the Seventh Circuit has recently stated that "[s]tate actors who needlessly create risks of harm violate the due process clause by depriving persons of life, liberty, or property without process." *Paine v. Cason,* 678 F.3d 500, 510 (7th Cir. 2012); *see also Sandage v. Board of Comm'rs of Vanderburgh County,* 548 F.3d 595, 598 (7th Cir. 2008) ("in both classes of case the victim is safe before the state intervenes and unsafe afterward.").

*Cason,* 678 F.3d 500, 510 (7th Cir. 2012) ("state actors who, without justification, increase a

person's risk of harm violate the Constitution."); *see also Reed v. Gardner*, 986 F.2d 1122, 1127

(7th Cir. 1993).  The Court thus turns to the third requirement, namely, whether Defendants'

failure to protect Plaintiff "shocks the conscience."

The "shocks the conscience" standard lacks precision, but "when the circumstances

permit public officials the opportunity for reasoned deliberation in their decisions, [courts] shall

find the official's conduct conscience shocking when it evinces a deliberate indifference to the

rights of the individual."  *King v. East St. Louis Sch. Dist., 189,* 496 F.3d 812, 819 (7th Cir.

2007).  That is the case here — the Sheriff's failure to adequately train deputies and officers to

keep juvenile detainees separate from adult detainees does not involve a situation in which the

Sheriff's officers had to make split-second decisions under pressure or in haste.  *See County of*

*Sacramento v. Lewis*, 523 U.S. 833, 853, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).  Instead, the

Sheriff has had ample opportunity to implement adequate training of the officers and deputies to

protect juvenile detainees prior to May 2008 when Sheriff's officers placed Plaintiff in a position

of significant danger causing Plaintiff's physical injury.  Indeed, as the Supreme Court teaches:

> [L]iability for deliberate indifference to inmate welfare rests upon the luxury
> enjoyed by prison officials of having time to make unhurried judgments, upon the
> chance for repeated reflection, largely uncomplicated by the pulls of competing
> obligations.  When such extended opportunities to do better are teamed with
> protracted failure even to care, indifference is truly shocking.

*Lewis*, 523 U.S. at 853.  Although the Due Process Clause of the Fourteenth Amendment is not a

guarantee against bad decisions, Defendants' conduct evidences deliberate indifference because,

under the circumstances, the Sheriff had the opportunity to prevent the foreseeable, dangerous

consequences of placing a juvenile in custody with adults by implementing sufficient training of

his officers and deputies. *See Armstrong v. Squadrito,* 152 F.3d 564, 576 (7th Cir. 1998) (the

Supreme Court has "endorsed the use of the deliberately indifferent standard for cases in which

the defendants have the luxury of forethought."). Therefore, the Court denies Defendants'

summary judgment motion in regard to Plaintiff's substantive due process claim.

On a final note, the Court has already rejected Defendant Cook County's attempt at

dismissal from this lawsuit because there is no employer/employee relationship between the

county and its sheriff. (R. 21, 8/27/12, Mem., Op., & Order, at 6-7.) As discussed in the Court's

August 27, 2012 Memorandum, Opinion, and Order, Plaintiff conceded that Cook County cannot

be held liable under the theory of respondeat superior under the circumstances. Nevertheless,

Cook County is an indispensable party to this lawsuit because state law requires the County to

pay judgments entered against the Sheriff's Office in its official capacity. *See Askew v. Sheriff of

Cook County,* 568 F.3d 632, 636 (7th Cir. 2009); *Carver v. Sheriff of LaSalle County,* 324 F.3d

947, 948 (7th Cir. 2003); 55 ILCS 5/5-1002.

## CONCLUSION

For these reasons, the Court denies Defendants' summary judgment motion brought

pursuant to Federal Rule of Civil Procedure 56(a).

**Dated:** June 23, 2014

**ENTERED**

**AMY J. ST EVE**
**United States District Court Judge**

15